UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FEDERAL TRADE COMMISSION,

Plaintiff,

v.

AH MEDIA GROUP, LLC, et al.,

Defendants.

Case No.  19-cv-04022-JD

**ORDER RE MOTION TO SET ASIDE AND VACATE STIPULATED ORDERS FOR PERMANENT INJUNCTION AND MONETARY RELIEF**

Re: Dkt. No. 143

In July 2019, the Federal Trade Commission (FTC) brought this action against defendants AH Media Group, LLC; Henry Block; Alan Schill; and relief defendant Zanelo, LLC, to put an end to their "online subscription scam," which involved the deceptive marketing and sales of personal care products and dietary supplements.  Dkt. No. 1 ¶ 14.  The FTC alleged that "[a]s a result of their deceptive, unfair, and unlawful conduct, defendants have taken more than $35 million from consumers across the United States." *Id*.[1]

After the Court entered a temporary restraining order, defendants appeared in the case and stipulated to the entry of a preliminary injunction against them.  Dkt. Nos. 26, 50.  They subsequently stipulated to permanent injunction and monetary judgment orders, which the Court entered.  Dkt. Nos. 111, 120.  Defendants did not object to either injunction, and did not bring any disputes about them to the Court for resolution.

Approximately one year after the entry of those final orders, the United States Supreme Court concluded in *AMG Capital Management, LLC v. Federal Trade Commission*, 141 S. Ct. 1341 (2021), that Section 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b), does not authorize the Commission to seek, or a court to award, equitable monetary relief such as

---

[1] The FTC's first amended complaint alleges the amount taken from consumers is in fact "more than $59 million."  Dkt. No. 74 ¶ 14.

United States District Court
Northern District of California

1    restitution or disgorgement.  This changed the legal landscape in our circuit with respect to the

2    manner in which the FTC may recover money from a wrongdoer.  *See*, *e.g.*, *Federal Trade*

3    *Commission v. Pantron I Corp.*, 33 F.3d 1088, 1102-03 (9th Cir. 1994).[2]

4        Defendants believe that *AMG* mandates a vacatur of the stipulated orders for permanent

5    injunction and monetary relief here, and they have filed a motion to that end under Federal Rule of

6    Civil Procedure 60(b).  Dkt. No. 143.  The Court found the motion suitable for decision without

7    oral argument and vacated the hearing.  Dkt. No. 151.  It is denied.

8                                        **BACKGROUND**

9        As the FTC's original complaint alleged, from "at least April 2016" through the filing of

10   the complaint in July 2019, defendants "operated an online subscription scam, involving online

11   marketing and sales of at least eight different product lines."  Dkt. No. 1 ¶ 14.  Defendants offered

12   "low-cost 'trials'" of personal care products and dietary supplements that promised "youthful skin

13   and weight loss," for "just the cost of shipping and handling, typically $4.99 or less."  *Id*.  When

14   consumers ordered these trial products, defendants enrolled them "into a continuity plan without

15   their knowledge or consent"; "automatically charge[d] consumers the full price for the product --

16   approximately $90"; and "continue[d] to charge consumers the product's full price, plus an

17   additional shipping and handling fee, each month until consumers cancel[led] their continuity

18   plan."  *Id*.  The FTC also alleged that defendants "frequently charge[d] consumers for additional

19   products," and enrolled them in additional continuity programs without their knowledge or

20   consent.  *Id*.  They "furthered their scheme by using a network of shell companies and straw

21   owners to process consumer payments," *id*. ¶ 15, and put into place restrictive cancellation and

22   refund practices that made it difficult for consumers to get their money back.  *Id*. ¶¶ 43-47.

23   _____

24   [2] To put a finer point on this, *AMG* clarified how the FTC may seek monetary relief in cases like
     this one, where the FTC is seeking to prevent "unfair or deceptive acts or practices" under Section
25   5 of the FTC Act, 15 U.S.C. § 45(a).  It by no means concluded that the FTC cannot obtain such
     relief.  *AMG* disapproved of the FTC's practice "[b]eginning in the late 1970s" of filing
26   complaints directly in federal court and seeking monetary relief under Section 13(b) of the FTC
     Act.  *AMG*, 141 S. Ct. at 1346.  The Court held that Section 13(b) did not grant to the FTC
27   "authority to obtain monetary relief directly from courts, thereby effectively bypassing the process
     set forth in § 5 and § 19."  *Id*. at 1347.  Rather, the Court determined that the proper procedural
28   route was for the FTC to "obtain monetary relief by first invoking its administrative procedures
     and then § 19's redress provisions (which include limitations)."  *Id*. at 1349.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

"Most of the scheme's business activities [were] conducted through AH Media," the day-to-day work of which was directed by defendant Henry Block. *Id*. ¶ 16. The FTC said Block "received millions of dollars [of] funds" from this scheme. *Id*. Defendant Alan Schill was "involved in at least some of the regular affairs of the business," and "received at least $900,000 dollars of funds from the scheme." *Id*. ¶ 17. The relief defendant Zanelo, "of which Schill is the sole Authorized Person," is alleged to have "also received over a million dollars from AH Media." *Id*.

With the complaint, the FTC filed an *ex parte* application for a temporary restraining order, which it supported with declarations and other evidence that provided an abundance of facts about defendants' fraudulent schemes. Dkt. Nos. 12, 13, 20, 21, 22. In addition to asking for an order stopping the defendants' dishonest conduct, the FTC sought an asset freeze "to prevent the dissipation of funds that could be used to redress injured consumers," and to "[a]ppoint a temporary equity receiver to take control of corporate Defendant AH Media and the 'Receivership Entities.'" Dkt. No. 12 at 2.

On July 18, 2019, after an *ex parte* hearing with the FTC, the Court granted a temporary restraining order. Dkt. Nos. 27, 26. The TRO prohibited defendants from continuing to engage in the unfair and deceptive practices identified in the complaint, and ordered an asset freeze and a temporary receivership appointment. Dkt. No. 26. The TRO was based on the "substantial volume of declarations and exhibits in support of the TRO application, in addition to the detailed allegations in the complaint." *Id*. at 2. The Court expressly noted, however, that "[b]ecause this is an expedited ex parte application, defendants may challenge [the findings] before the preliminary injunction hearing." *Id*. The TRO was short in duration, setting the preliminary injunction hearing just 14 days from the date of the TRO, *i.e.*, on August 1, 2019. *Id*. at 2, 28.

On July 25, 2019, the FTC filed a notice that it had served the TRO on defendants. Dkt. No. 28. On July 29, 2019, defendants stipulated to continue the preliminary injunction hearing from August 1 to August 29, 2019, while keeping the TRO in place until the hearing. Dkt. No. 30. The Court granted the requested continuance. Dkt. No. 31. In effect, defendants' first action after appearing in the case was to agree to extend the freeze of their assets for another 28 days.

On August 25, 2019, defendants filed a Response to Order to Show Cause Why a Preliminary Injunction Should Not Issue, which asked the Court to deny a preliminary injunction, and dissolve the asset freeze and receivership.  Dkt. No. 44.  On August 27, 2019, just two days later and before the Court could hold a hearing, defendants jointly filed with the FTC a proposed Stipulated Preliminary Injunction.  Dkt. No. 50.  The joint request stated that the "FTC and Stipulating Defendants have stipulated and agreed to the entry of this Order without any admission of wrongdoing or violation of law, and without a finding by the Court other than" what was stated in the stipulated order.  *Id*. at 2.  The proposed findings included that the Court "has subject matter jurisdiction over the case," and "has authority to issue this Order under Sections 13(b) and 19 of the FTC Act, 15 U.S.C. § 53(b); Federal Rule of Civil Procedure 65; and the All Writs Act, 28 U.S.C. § 1651."  *Id*. at 2-3.  The stipulated order imposed an asset freeze, *id*. at 9-11, and consented to the appointment of a receiver.  *Id*. at 17.  The Court entered the parties' Stipulated Preliminary Injunction on August 28, 2019, and vacated the preliminary injunction hearing that had been set for August 29, 2019.  Dkt. No. 52.

Other proceedings ensued, including the grant of living expenses for defendants Schill and Block.  *See, e.g.*, Dkt. Nos. 53, 57.  Defendants made a motion for release of receivership funds to pay legal fees, Dkt. No. 60, which was denied without prejudice to renewal with additional details.  Dkt. No. 76.  The Court's minute order expressly contemplated the payment of attorney's fees: "Defense counsel are advised to avoid block billing and to minimize overlap in the work performed for clients.  The parties are encouraged to meet and confer on a reasonable legal budget for defendants for the next 6-12 months.  The parties may seek the Court's assistance if needed."  *Id*.  Defendants did not file another request for legal fees.  The parties were referred to a magistrate judge for settlement.  *Id*.

After two settlement conferences and other ancillary proceedings, the parties filed on February 19, 2020, a Stipulated Order for Permanent Injunction and Monetary Judgment Against Alan Schill and Zanelo, LLC.  Dkt. No. 107.  The stipulated order was entered by the Court on March 6, 2020, and is one of the orders defendants seek to set aside here.  Dkt. No. 111.  Among other action, it ordered that "[j]udgment in the amount of seventy-four million, five hundred

thousand dollars ($74,500,000) is entered in favor of the Commission against Stipulating Defendants, jointly and severally, as equitable monetary relief." *Id*. at 9. Schill and Zanelo were ordered to "transfer to Receiver 415,973.437 units of Chainlink cryptocurrency," and upon transfer, the remainder of the monetary judgment was to be suspended. *Id*.

On May 6, 2020, the parties filed a Stipulated Order for Permanent Injunction and Monetary Judgment Against AH Media Group, LLC and Henry Block, which was entered by the Court on May 14, 2020. Dkt. Nos. 119, 120. That is the other order that is the subject of defendants' present Rule 60 motion. The stipulated order against AH Media and Block provided for "[j]udgment in the amount of sixty-seven million dollars ($67,000,000)." Dkt. No. 120 at 9. In partial satisfaction of the judgment, Block was to pay to the FTC one million and forty-five thousand dollars, and transfer to the Receiver all funds in five separate bank accounts. *Id*. at 9-10. Upon those payments and asset transfers, the remainder of the judgment against AH Media and Block was to be suspended. *Id*. at 10.

All of these events were settled until April 2021, when the Supreme Court filed its decision in *AMG Capital Management*, 141 S. Ct. 1341. On July 22, 2021, defendants filed the present motion under Rule 60(b)(4), (5) and (6), to set aside and vacate the stipulated orders. Dkt. No. 143. Rule 60(b) "provides an 'exception to finality' that 'allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances.'" *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 269 (2010) (internal citation omitted). "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . . (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b).

## DISCUSSION

### I. RULE 60(B)(4)

Rule 60(b)(4) "authorizes the court to relieve a party from a final judgment if 'the judgment is void.'" *Espinosa*, 559 U.S. at 270; *see also* Fed. R. Civ. P. 60(b)(4). "Rule 60(b)(4)

United States District Court
Northern District of California

1    applies only in the rare instance where a judgment is premised either on a certain type of

2    jurisdictional error or on a violation of due process that deprives a party of notice or the

3    opportunity to be heard." *Espinosa*, 559 U.S. at 271.

4         Defendants say that the Court "lacked subject matter jurisdiction to enter prejudgment

5    orders for monetary and injunctive relief or to enter the judgments in this case." Dkt. No. 143 at 3.

6    The point is not well taken.  Throughout these proceedings, defendants repeatedly stipulated that

7    the Court "has subject matter jurisdiction over the case," *see* Dkt. No. 52 at 2; Dkt. No. 111 at 2;

8    Dkt. No. 120 at 2, and for good reason.  The complaint alleges that defendants violated three

9    federal statutes -- the FTC Act, the Restore Online Shoppers' Confidence Act (ROSCA), and the

10   Electronic Fund Transfer Act (EFTA) -- which are classic predicates of federal question

11   jurisdiction.  Dkt. No. 74 ¶¶ 1-2.

12        Defendants do not deny the presence of federal question jurisdiction under 28 U.S.C.

13   § 1331, but say that Section 13(b) and Section 19 of the FTC Act do not authorize the monetary

14   and injunctive relief.  Dkt. No. 143 at 4-7.  This is an outright backflip by defendants, and a

15   disingenuous one at that.  They expressly stipulated in prior filings that these statutory sections

16   authorized the monetary and injunctive relief they themselves agreed to.  In any event, relief under

17   Rule 60(b)(4) is reserved "only for the exceptional case in which the court that rendered judgment

18   lacked even an 'arguable basis' for jurisdiction," and "total want of jurisdiction must be

19   distinguished from an error in the exercise of jurisdiction."  *Espinosa*, 559 U.S. at 271.  These

20   circumstances are not present here.  This is not a situation of a total want of jurisdiction, or one in

21   which the Court lacked even an arguable basis in jurisdiction.  *See Hoffmann v. Pulido*, 928 F.3d

22   1147, 1151 (9th Cir. 2019) ("the scope of what constitutes a void judgment [under Rule 60(b)(4)]

23   is narrowly circumscribed, and judgments are deemed void only where the assertion of jurisdiction

24   is truly unsupported"); *see also United States v. Philip Morris USA Inc.*, 840 F.3d 844, 850 (D.C.

25   Cir. 2016) (the court's "authority to impose certain remedies" is "fundamentally different from a

26   court's subject matter jurisdiction over a case and from its personal jurisdiction over the parties,

27   both of which concern the power to proceed with a case at all," and "[e]xtending Rule 60(b)(4)

28   relief beyond such 'fundamental infirmit[ies]' would raise serious finality concerns") (quoting

1    *Espinosa*, 559 U.S. at 270).  Rule 60(b)(4) relief for a lack of jurisdiction to enter the stipulated

2    orders is denied.

3            Defendants' due process contention is even more egregiously disingenuous.  They say that

4    "[b]ecause the Judgments were grounded upon the void Preliminary Injunction, (which was, in

5    turn, continued from the unlawful TRO), Defendants were never heard in a meaningful way; on

6    the contrary, their initial defensive arguments fell on deaf judicial ears based on the Court's

7    misplaced reliance on pre-*AMG* law."  Dkt. No. 143 at 8.

8            This is a scurrilous misrepresentation of the record.  Defendants never disputed or objected

9    to the application of Section 13(b) and Section 19 of the FTC Act to this case.  To the contrary,

10   defendants freely and voluntarily stipulated to the entry of a preliminary injunction just two days

11   after they filed an opposition to it, without any request that the Court hear them on anything.  Dkt.

12   Nos. 44, 50.  Defendants also voluntarily stipulated to the final orders, which bound defendants to

13   injunctive and monetary remedies in favor of the FTC, again without any objections or a request

14   that the Court to hear them on any issue.  Dkt. Nos. 107, 119.  To call the Court "deaf" when

15   defendants never spoke up is dishonest and dead wrong, and raises troubling questions about the

16   adherence of defendants and their lawyers to the duty of candor in judicial proceedings.  The

17   record demonstrates that defendants were "afforded a full and fair opportunity to litigate," and

18   their utter "failure to avail [themselves] of that opportunity" does not justify Rule 60(b)(4) relief.

19   *Espinosa*, 559 U.S. at 276.

20   **II.    RULE 60(B)(5)**

21           Rule 60(b)(5) permits relief from a final judgment or order when "the judgment has been

22   satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or

23   vacated; or applying it prospectively is no longer equitable."  Defendants reach for the latter two

24   of these grounds.  Dkt. No. 143 at 9-12.

25           Neither applies here.  The stipulated orders here were not "based on an earlier judgment

26   that has been reversed or vacated."  Fed. R. Civ. P. 60(b)(5).  "[T]he application of Rule 60(b)(5)

27   is limited to a judgment *based* on a prior judgment reversed or otherwise vacated -- based in the

28   sense of res judicata, or collateral estoppel, or somehow part of the same proceeding."  *Tomlin v.*

United States District Court
Northern District of California

*McDaniel*, 865 F.2d 209, 210-11 (9th Cir. 1989) (emphasis in original), *declared overruled on other grounds by Phelps v. Alameida*, 569 F.3d 1120, 1132 (9th Cir. 2009).  Under the plain language of the rule, there simply is no "earlier judgment that has been reversed or vacated" that these stipulated orders were based on; there has only been a subsequent decision in a different case, which defendants seek to benefit from.

The stipulated orders also lack a prospective effect within the scope of the last Rule 60(b)(5) ground.  For Rule 60(b)(5), "it is the prospective effect (rather than the continuing or ongoing nature) of an injunction that matters," and a judgment "that offer[s] a present remedy for a past wrong" -- as is the case here -- is different from a "judgment with prospective effect." *California by and through Becerra v. U.S. Environmental Protection Agency*, 978 F.3d 708, 717 (9th Cir. 2020) (citation omitted); *see also Stokors S.A. v. Morrison*, 147 F.3d 759, 762 (8th Cir. 1998) ("while the judgment against Morrison may be 'prospective' to the extent that he has failed to pay it in a timely manner, it is nevertheless a final order and is not 'prospective' for purposes of Rule 60(b)(5).  We conclude that Rule 60(b)(5)'s equitable leg cannot be used to relieve a party from a money judgment").  Consequently, there is no basis for relief under Rule 60(b)(5).

### III.    RULE 60(B)(6)

As a closing point, defendants say that "[a]lternatively, relief under Rule 60(b)(6) is available in extraordinary circumstances where significant and unexpected hardship will result if relief is not available under subsections (b)(1)-(5)."  Dkt. No. 143 at 12.  They allege such extraordinary circumstances exist here.

Not so.  Rule 60(b)(6) authorizes relief from a final judgment or order for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  The rule is a "grand reservoir of equitable power," and "a change in the controlling law can -- but does not always -- provide a sufficient basis for granting relief under Rule 60(b)(6)." *Henson v. Fidelity Nat'l Financial, Inc.*, 943 F.3d 434, 439, 444 (9th Cir. 2019).  In the well-documented circumstances before the Court, it is easy to conclude that justice and equity weigh heavily against relief for defendants. *Id*. at 440.

The Supreme Court's decision in *Ackermann v. United States*, 340 U.S. 193 (1950), is instructive.  Petitioner Ackermann sought relief under Rule 60(b)(6) to set aside a judgment

United States District Court
Northern District of California

8

cancelling his certificate of naturalization, after his brother-in-law successfully appealed, and had

his order cancelling citizenship reversed.  Ackermann did not appeal, and the Supreme Court held

that he failed to "allege[] circumstances showing that his failure to appeal was justifiable."  340

U.S. at 197.

Contrasting the case with an earlier decision, *Klapprott v. United States*, 335 U.S. 601

(1949), in which Rule 60(b)(6) relief was granted (and which defendants here also invoke, Dkt.

No. 143 at 12), *Ackermann* held that "[b]y no stretch of imagination can the voluntary, deliberate,

free, untrammeled choice of petitioner not to appeal compare with the Klapprott situation."

*Ackermann*, 340 U.S. at 200.  Klapprott was "ill, and the illness left him financially poor and

unable to work"; when served with the complaint, he "had no money to hire a lawyer"; after being

served, Klapprott was arrested in a separate criminal case and jailed in default of bond; "[w]ithin

ten days after his arrest, Klapprott was defaulted" in his citizenship proceedings, which the Court

later set aside.  *Id*. at 200-01.

In contrast, Ackermann, when sued, was "well, and had a home worth $2,500, one-half

interest in a newspaper, and the means to employ counsel"; he "had the means to hire and did hire

able counsel of his own choice who prepared and filed an answer for him"; he "was never indicted

or in jail from the time complaint was filed against him until after judgment, during all of which

time he had the benefit of counsel and freedom of movement and action."  *Id*.

Defendants here are far closer to the circumstances of Ackermann than Klapprott, and

"[n]either the circumstances of [defendants] nor [their] excuse for not" pressing the Section 13(b)

issue themselves is "so extraordinary as to bring [them] within Klapprott or Rule 60(b)(6)."  *Id*. at

202.  Rather, defendants' choice to stipulate to all relief in this case "was a risk, but calculated and

deliberate and such as follows a free choice."  *Id*. at 198.  Defendants "cannot be relieved of such a

choice because hindsight seems to indicate to [them] that [their] decision not to [litigate and press

the Section 13(b) issue] was probably wrong, considering the outcome of the [*AMG*] case.  There

must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved

from."  *Id*.

1   For the sake of completeness, the Court also considers and addresses the relevant factors as

2 discussed in *Henson v. Fidelity National Financial, Inc.*, 943 F.3d 434 (9th Cir. 2019).  The

3 factors were originally set out in *Phelps v. Alameida*, 569 F.3d 1120 (9th Cir. 2009).  These were

4 "not intended to be a rigid or exhaustive list," and the Court's "ultimate charge in evaluating a

5 Rule 60(b)(6) motion remains to 'intensively balance' all the relevant factors, 'including the

6 competing policies of the finality of judgments and the incessant command of the court's

7 conscience that justice be done in light of all the facts.'"  *Henson*, 943 F.3d at 446 (quoting

8 *Phelps*, 569 F.3d at 1133, 1135).

9   To start, the law in our circuit was settled decidedly against defendants at the time they

10 stipulated to the orders at issue.  This factor cuts against granting relief.  *See id.* at 446.  The

11 predicament defendants face "is the result of their knowingly taking a calculated risk for which

12 they should be held responsible," *id.* at 447, namely that the settled law against them was probably

13 not likely to change.  This is all the more true because at the time defendants entered into their

14 stipulated orders, the petition for a writ of certiorari in the *AMG* case had already been filed and

15 was fully briefed, including multiple briefs by amici curiae.  *See AMG Capital Management, LLC*

16 *v. Federal Trade Commission*, No. 19-508 (U.S.).

17   Defendants' protestations of economic duress and the inability to afford legal counsel are

18 another outright mischaracterization of the record.  The Court denied defendants' initial request

19 for attorney's fees without prejudice, and made clear that defendants should renew their motion

20 with the facts missing in the first try, and that their lawyers would eventually get paid from the

21 funds held by the receiver.  Dkt. No. 76.  Defendants again voluntarily chose not to take advantage

22 of this open door, and that is a decision for which they alone are responsible.  To suggest that the

23 Court coerced them financially in any way is part and parcel of the dishonest approach that

24 defendants and their attorneys have taken in this motion.

25   As discussed, defendants showed no diligence at all in pursuing the legal basis on which

26 they are now seeking equitable relief from judgment.  *Henson*, 943 F.3d at 449-50.  They did not

27 ask the Court even once to hear any of their arguments on this issue.  This factor cuts sharply

28 against defendants.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    The parties' reliance interest in the finality of the case is neutral.  The orders here did not

2    engender reliance interests such as when "a judgment conveys land from one party to another and

3    the prevailing party enters upon the land and installs pipes and appurtenances."  *Id*. at 450 (cleaned

4    up).  The delay between the judgment and the Rule 60(b)(6) motion is also neutral to slightly

5    favoring defendants.  The stipulated orders were entered in March and May of 2020, and

6    defendants' Rule 60(b)(6) motion was filed in July 2021.  The delay of less than a year and a half

7    is not a terribly long one.  The relationship between the original judgment and the change in the

8    law is a close one.  This factor would perhaps weigh most strongly in favor of Rule 60(b)(6) relief,

9    but for the fact that the original judgments were entered at defendants' request, which severely

10   undercuts defendants' claim for relief.  Another circumstance relevant to this specific motion is

11   that defendants all "waive[d] all rights to appeal or otherwise challenge or contest the validity of"

12   the stipulated orders.  Dkt. No. 111 at 2; Dkt. No. 120 at 2.  For the sake of "ensur[ing] that justice

13   be done in light of all the facts," *Henson*, 943 F.3d at 440, the Court declines to find defendants'

14   waivers as conclusively barring the Rule 60(b) relief they are seeking, but the fact of their

15   voluntary waivers is another factor that cuts against granting them relief.

16       Overall, an intensive balancing of all relevant factors and the call to do justice mandate

17   denial of Rule 60(b)(6) relief in this case.  Granting defendants' motion would do no justice,

18   especially where all it would likely mean is that the FTC would simply have to take a different

19   procedural route to get to the same substantive outcome.  *See AMG*, 141 S. Ct. at 1349 ("The

20   Commission may obtain monetary relief by first invoking its administrative procedures and then

21   § 19's redress provisions (which include limitations).").  The disingenuous arguments defendants

22   made in their motion, and their frequent distortions of the record, certainly did not advance the

23   notion that they are aggrieved parties deserving in any way of extraordinary relief from their own

24   missteps and lack of diligence.

25   //

26   //

27   //

28   //

**CONCLUSION**

The Rule 60(b) motion to set aside and vacate the stipulated orders for permanent injunction and monetary relief is denied.

**IT IS SO ORDERED.**

Dated:  November 1, 2021

_____

JAMES DONATO
United States District Judge